1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, | No. 1:94-CR-0005011 JLT 5 |
| 12 Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE |
| 13 v. | RELEASE UNDER 28 U.S.C. § 3582(c)(1)(A) |
| 14 GERARDO DELGADO-GARIBAY, | (Docs. 681, 691, 699) |
| 15 Defendant. | |

16

17       Gerardo Delgado-Garibay is a federal prisoner moving for compassionate release under

18 28 U.S.C. § 3582(c)(1)(A). (Docs. 681, 691, 699.) He is currently serving a term of life in

19 prison. (Doc. 389.) He makes multiple arguments that his sentence should be amended. He

20 argues that intervening changes in law make a reduction in his sentence appropriate, that the 2-

21 level offense enhancement for having a weapon at the scene of the crime was inapplicable, that

22 he is at increased risk because of the COVID-19 pandemic and that he has made significant

23 efforts toward rehabilitation during the last 29 years. (*Id.*) Finally, he argues that the sentencing

24 factors, set forth in 18 U.S.C. § 3553(a), favor a lesser sentence. (*Id.*) He "respectfully requests

25 that this court reduce or modify his term of confinement to a period of 30-years or any other

26 relief available as this honorable court deems appropriate. (Doc. 681 at 1.) The Government

27 opposes Delgado-Garibay's motion, arguing that "[h]is motion should be denied because he fails

28 to carry his burden to demonstrate 'extraordinary and compelling' reasons for a time-served

1

1   sentence under 18 U.S.C. § 3582(c)(1)(A)." (Doc. 695 at 1.) Delgado-Garibay replied that he

2   "has demonstrated that 'extraordinary and compelling reasons' exist warranting his

3   compassionate release after serving almost 30 years of imprisonment." (Doc. 698 at 6.) For the

4   reasons explained below, the motion is **GRANTED**.

5   **BACKGROUND**

6       Beginning in January 1993, Gerardo Delgado-Garibay, as a leader of the organization,

7   conspired with many others, to manufacture and distribute methamphetamine. (Doc. 701 at 6, 7)

8   The petitioner, along with his cohorts, operated a meth lab on another conspirator's property in

9   exchange for paying the property owner $10,000 per month. *Id*. The lab could produce 100

10  pounds of methamphetamine during each "cook," and did so on at least one occasion. *Id*. On two

11  occasions, the petitioner was stopped by law enforcement officers, and large amounts of cash

12  were found in his car. *Id*. at 8.

13      During his 15-day trial, witnesses testified that Delgado-Garibay threatened to kill a

14  witness if she testified against him. (Doc. 585 at 20) When she testified despite the threat, the

15  witness said that, indeed, she was afraid. *Id*. A third witness testified that Delgado-Garibay "kills

16  other people just for the fun of it." *Id*. In addition, the trial court found that a rifle belonging to

17  the petitioner was used by him for protection at the site of the illicit methamphetamine lab he

18  operated. *Id*. at. 28. At the conclusion of the trial, Delgado-Garibay was found guilty of one

19  count of conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C.

20  846 and 841(a)(1) and one count of manufacturing methamphetamine and aiding and abetting in

21  violation of 21 U.S.C. 841(a)(1) and 18 U.S.C. 2. (PSR at 1.)

22      At his sentencing hearing, the Court found calculated the base offense level by

23  considering the quantity of drugs involved in the case. (PSR at 8.) At trial, "law enforcement

24  agents" testified that Delgado-Garibay operated a lab in Woodlake, CA capable of producing

25  100 pounds of methamphetamine at a time. (*Id*. at 6.) At the time of his sentencing—and

26  today—the weight of the narcotics at issue warranted a base offense level of 38. USSG §

27  2D1.1(c); (PSR at 6-7.)

28      The Court found then found two enhancements applied to the base offense level. The first

2

1   was a two-level enhancement for having a weapon present at the large-scale drug operation

2   pursuant to USSG § 2D1.1. (PSR at 9.) A confidential informant testified that Delgado-Garibay

3   had taken the weapon to the manufacturing site, and it was later found at his home. (*Id*.) The

4   second enhancement was due to Delgado-Garibay's leadership/organizer role in the offense

5   pursuant to USSG § 3B1.1(a). (PSR at 9.) Trial testimony and witness statements indicated

6   Delgado-Garibay was an "organizer or leader of a criminal activity that involved five or more

7   participants." (*Id*.) This resulted in Delgado-Garibay receiving a four-level enhancement,

8   bringing his total offense level to 44. (*Id*. at 10.) Combined with his level II criminal history

9   category, the Court determined his mandatory guideline range to be life in custody. Based on his

10  two convictions, the Court sentenced Delgado-Garibay two life sentences to be served

11  concurrently. (Docs. 389, 391.)

12      Delgado-Garibay appealed to the Ninth Circuit and asserted that his trial counsel was

13  ineffective for failing to move to suppress certain evidence and that the District Court erred in

14  using 100 pounds to calculate the base offense level and in finding that Delgado-Garibay was a

15  leader/organizer of the crime involving more than five participants. *United States v. Magallon*,

16  113 F.3d 1243 (9th Cir. 1997). The Ninth Circuit affirmed, finding that Delgado-Garibay's

17  ineffective assistance of counsel was "without merit because there is no reasonable probability

18  that his counsel's alleged errors were prejudicial." *Id*. The Ninth Circuit found also that "[t]he

19  evidence before the district court here was more than sufficient to establish that the

20  methamphetamine conspiracy involved at least 100 pounds" even though no drugs were seized.

21  *Id*. Finally, the Ninth Circuit found that [t]he evidence clearly showed that Garibay played a

22  leadership role, and that well over five participants were involved in the criminal conspiracy."

23  *Id*.

24      In addition to the sentence imposed in this case, around the same time, Delgado-Garibay

25  pled guilty to four counts of use of communication facility to facilitate a drug trafficking offense

26  in violation of 21 U.S.C. 843(b) and was sentenced to 48 months imprisonment and 17 months

27  of supervised release, to be served consecutively to other sentences. (2:94-cr-00320-JAM-4 at

28  Doc. 465.)

Of the codefendants tried with Mr. Delgado-Garibay, one was sentenced to 360 months in prison (Doc. 346), another was sentenced to 235 months in prison (Doc. 347) and the final defendant was sentenced to 290 months in prison (Doc. 348). The two codefendants with the higher sentences were convicted on Counts one and two, as was Mr. Delgado-Garibay, and the final codefendant was convicted only of count one. (Docs. 316-319)

Delgado-Garibay is currently incarcerated at FCI Florence. (*Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc (last visited August 9, 2024).) On September 14, 2021, Delgado-Garibay moved for compassionate release. (Doc. 681.) At the time, Delgado-Garibay had served 27-years in custody. (*Id.*)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA"), imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). A defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

First, a defendant petitioning for compassionate release must exhaust administrative remedies. Once they do so, courts consider whether "extraordinary and compelling reasons warrant" the requested reduction. 18 U.S.C. § 3582(c)(1)(A) (2018). Then, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id.*

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* New sentencing guidelines went into effect on November 1, 2023. *See* U.S.S.G. § 1B1.13 (last amended Nov. 1, 2023). This court refers to the Sentencing Commission's policy statement for guidance. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (Stating that "[t]he Sentencing Commission's

statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding" regarding the previous policy statement issued in 2006). The amendments contain six types of circumstances that may qualify as "extraordinary and compelling." *Id*. These are 1) the medical circumstances of the defendant, 2) the age of the defendant, 3) the family circumstances of the defendant, 4) whether the defendant was a victim of abuse while in custody, 5) other reasons that are similar in gravity to 1-4, and 6) an unusually long sentence. USSG §1B1.13, p.s. (last amended Nov. 1, 2023). If a court finds that extraordinary and compelling circumstances exist, it must then look at the § 3553 factors to determine if these support a sentence reduction. *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021).

## ANALYSIS

### A.   Administrative Exhaustion

Section 3582(c)(1)(A) of Title 18 of the United States Code permits an inmate to move for compassionate release after exhausting their administrative remedies or 30 days after they submit their request to the Warden. Florence FCI's Warden denied Delgado-Garibay's request for compassionate release on April 21, 2021. (Doc. 681 at 33.) Because the BOP denied Delgado-Garibay's request, he has exhausted his administrative remedies and is permitted to file this motion. The Government agrees that Delgado-Garibay has exhausted his administrative remedies. (Doc. 695 at 4-5.)

### B.   Extraordinary and Compelling Reasons

Delgado-Garibay argues that he qualifies for relief under 18 U.S.C. § 3582(c)(1)(A) because (a) the two-level weapon enhancement to his base offense level is inapplicable, (b) he is at increased risk should he contract COVID-19, (c) he has made significant efforts toward rehabilitation, (d) changes in intervening law would result in him receiving a lesser sentence today, and (e) the 3553 sentencing factors weigh in favor of a sentence reduction. (Docs. 681, 691, 699.)

#### a.   Weapon Enhancement

Delgado-Garibay argues that his offense level was enhanced by two "based on a .22

5

1    caliber haunting [sic] rifle." (Doc. 681 a 4.) At trial, a confidential informant testified that

2    Delgado-Garibay had taken a .22 rifle to the lab site. (PSR at 7.) Agents found "a .22 caliber rifle

3    and a Glock pistol with laser sites" when they searched Delgado-Garibay's home. (*Id*.)

4        Delgado-Garibay argues that the rifle was "found in the attic of his garage" and that he

5    therefore "falls into the category of cases in which the guidelines declare that 'unloaded hunting

6    rifle in the closet' are not to be considered for enhancement." (Doc. 681 at 4-5.) The Court

7    previously determined this issue against Delgado-Garibay when he raised it in his petition to

8    vacate or set aside conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 585 at 28-31.)

9    Delgado-Garibay cannot raise this issue again here.

10        **b.  COVID-19**

11        Delgado-Garibay argues that COVID-19, in combination with the comorbidities from

12    which he suffers, are sufficiently extraordinary and compelling to merit his release. (Doc. 681 at

13    2.) The Court disagrees.

14        Though early in the COVID-19 pandemic, courts were inclined to release prisoners

15    suffering from conditions that put them at a higher risk of complications should they contract

16    COVID-19, we are sufficiently removed from that reality for the same reasoning to apply. The

17    advent of COVID-19 vaccines and their boosters have made it significantly safer, even for those

18    inmates suffering from conditions that may increase their risk if not treated. However, Delgado-

19    Garibay does not suffer from any conditions that are not treatable by the BOP (Doc. 681 at 2.).

20    Thus, the Court finds that the COVID-19 pandemic is not an extraordinary and compelling

21    reason meriting his release.

22        **c.  Rehabilitation Efforts**

23        Delgado-Garibay argues that he has made significant rehabilitation efforts during his

24    incarceration. (Doc. 681 at 23.) He received his GED in 1996 and is now proficient in English.

25    (Doc. 691-3 at 2.) At the time the instant motion was filed, he had taken nearly 40 classes. (*Id*. at

26    2-3.) His last reported incident was over 20 years ago. (Id.)

27        The government argues that "Delgado-Garibay's rehabilitation, while commendable,

28    does not warrant release" and that "being a model inmate does not warrant an abrupt departure

6

from a defendant's current sentence." (Doc. 695 at 8 (internal punctuation omitted).) Rehabilitation efforts alone are not sufficient to constitute extraordinary and compelling reasons meriting compassionate release. U.S.S.G. §1B1.13, comment. (n.3). However, "impressive rehabilitation efforts [] are obviously a relevant consideration." *United States v. Favela*, No. 1:94-CR-05044-DAD-1, 2022 WL 4450496, at *12 (E.D. Cal. Sept. 23, 2022).

The Court agrees with the government's reasoning. Delgado-Garibay has made efforts to improve himself, including taking numerous classes. This demonstrates good effort at rehabilitation, but spread over his 28 years of imprisonment, they are not sufficient to merit compassionate release, though they weigh in favor of it.

### d.  Intervening Law

Courts in this Circuit "*must* consider 'non-retroactive changes in sentencing law' when evaluating compassionate release motions brought under § 3582(c)(1)(A)." *Favela*, 2022 WL 4450496 at *11 (citing *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022)) (emphasis added). Other courts, including ones in this district, have held that changes in sentencing law, "including the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005) that the U.S. Sentencing Guidelines are advisory and their application cannot be mandatory, coupled with the enactment of the FSA—can constitute extraordinary and compelling reasons that warrant compassionate release." *Id.*

Delgado-Garibay argues that "much has changed since [his] trial and sentence." (Doc. 681 at 2.) He cites to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) (finding that factors increasing the statutory maximum of a sentence must be submitted to a jury and found beyond a reasonable doubt rather than a preponderance of the evidence by the judge) and *United States v. Booker*, 543 U.S. 220 (2005) (making the sentencing guidelines advisory rather than mandatory.) Delgado-Garibay argues that "if [he] were resentenced, he would not be looking at anything close to a life sentence." (Doc. 681 at 3.)

Delgado-Garibay was sentenced to life imprisonment because the sentencing guidelines were mandatory in 1995, and the court lacked the discretion to impose a different sentence absent a recognized ground for departure. However, even were he to be sentenced today, his

offense level of 44 and criminal history category of II, place him in the guideline range calling for life imprisonment. (PSR at 3; USSG Ch.5, Pt. A.) Also, at the time he was sentenced, he was on supervision for committing another crime, though it appears that this other crime was related to his ongoing drug trafficking scheme at issue in this case. Even still, it appears the Court imposed the low-end prison term allowed by the relevant guideline range for each of the three codefendants who were convicted after trial. The Court is persuaded that had the Court had the option of sentencing Mr. Delgado-Garibay to a term of incarceration of less than life, he would have received a lesser sentence. Thus, the Court finds this to be an extraordinary and compelling reason to modify Mr. Delgado's-Garibay's sentence. In addition, the Court finds that modifying his sentence is consistent with applicable policy statements issued by the Sentencing Commission, which has strongly encouraged courts to promote proportionality in sentencing and to reduce the cost of unnecessary incarceration. In this case, the crimes of which the defendant was convicted did not involve the use of violence—despite the evidence about the defendant's violent propensities. Imposing a life sentence was not proportional to the harms he caused.

## C.    Consistency with the § 3553(a) Factors

The Court notes that Mr. Delgado-Garibay was 25 years old when the law enforcement investigation began. (Doc. 701 at 6) By the time he was sentenced in 1995, he had been convicted of attempting to illegally carry more than $25,000 over the US-Mexico border. (Doc. 701 at 12) He was sentenced to two years of probation for that crime just before his 26th birthday and was pending violation of his probation for providing false information to his probation officer. *Id*. Undoubtedly, his criminal conduct was encouraged by his youth. Now, the defendant is approaching his 57th birthday and suffers from many medical conditions, which commonly affect people his age. (Doc. 691-1 at 2)

The defendant now admits full responsibility for the conduct which caused his incarceration and expresses his deep remorse. (Doc. 681 at 29) He has four children, though one died in 2018, and grandchildren. *Id*. at 2. His offspring have become productive members of society (Doc. 681 at 27). He has a supportive family to which to return, and he has a viable release plan. The Court is convinced that he is no longer a danger to society.

A lengthy sentence is required for the defendant's dangerous and risky criminal conduct. As the leader of the drug manufacturing and distribution organization, to avoid sentencing disparities, he should be sentenced to a longer sentence. His codefendant, who was sentenced to 360 months in prison, has completed his term of incarceration, completed four years of supervised release and a year ago, was granted early termination of that supervision (Doc. 708) The Court concludes that the sentence the defendant has served in this case is enough.

<strong>CONCLUSION</strong>

For the reasons discussed above, the Court **ORDERS**:

**1.** The defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Docs. 681, 691, 699), is **GRANTED** and his sentenced is modified to time served. **<u>However, because he is required to serve a term of incarceration consecutive to this term, that obligation must be satisfied before his release.</u>**

2. Once he is released, he **SHALL** be placed on five years of supervised release upon the following terms:

<strong>SPECIAL CONDITIONS OF SUPERVISION</strong>

1.   You must submit your person, property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer or any law enforcement officer at any time, based upon reasonable suspicion of unlawful conduct or a violation of a condition of supervision, without a search warrant. Failure to submit to a search may be grounds for revocation. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

2. You must participate in an outpatient substance abuse/alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program.

3. You must submit to substance abuse/alcohol abuse testing to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the

9

testing methods.

4. You must participate in a co-payment plan for treatment, testing and/or medication and shall make payment directly to the vendor under contract with the United States Probation Office. Your co-payment will be determined utilizing a Sliding Fee Scale based upon your disposable income.

## STANDARD CONDITIONS OF SUPERVISION

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the probation officer.

4. You must answer truthfully the questions asked by the probation officer.

5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7. You must work full time (at least 30 hours per week) at a lawful type of employment unless the probation officer excuses you from doing so. If you do not

10

have full-time employment, you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the Court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

///

///

///

13. You must follow the instructions of the probation officer related to the conditions of supervision.

IT IS SO ORDERED.

Dated:   **August 12, 2024**

UNITED STATES DISTRICT JUDGE